UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

AMY J. PENIRD,

                                         **Plaintiff,**

   vs.                                                  5:19-CV-1146
                                                           (MAD/TWD)

CRAIG S. BETTER, and
NYS WORKERS' COMPENSATION BOARD,

                                         **Defendants.**
_____

APPEARANCES:                                 OF COUNSEL:

AMY J. PENIRD
25 Center Street
Union Springs, New York 13160
Plaintiff *pro se*

OFFICE OF THE NEW YORK          HELENA O. PEDERSON, AAG
STATE ATTORNEY GENERAL
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    On September 16, 2019, *pro se* Plaintiff Amy J. Penird commenced this action against Defendants Craig S. Better and the NYS Workers' Compensation Board, alleging violations of the American with Disabilities Act ("ADA"). *See* Dkt. No. 1. Specifically, Plaintiff alleges a violation of Title I of the ADA for disability discrimination arising from a failure to accommodate, 42 U.S.C. § 12112 *et seq*., a violation of Title V of the ADA for retaliation, 42 U.S.C. § 12203(a), and a hostile work environment claim pursuant to the ADA. Plaintiff seeks

1

the following relief: (1) lost wages; (2) an order directing Defendants to grant Plaintiff a reasonable accommodation of telecommuting five days per week; and (3) compensation for stress. Dkt. No. 1 at 4.

On October 13, 2020, Defendants filed a motion to dismiss for lack of personal jurisdiction, lack of subject of matter jurisdiction, and failure to state a claim. Dkt. No. 23. Plaintiff requested two, sixty-day extensions to respond, which this Court granted. Dkt. Nos. 24, 25, 26, 27. Plaintiff filed her response on March 8, 2021 and Defendants filed their reply on March 15, 2021. Dkt. Nos. 28, 29.

## II. BACKGROUND

Plaintiff, Amy J. Penird, is employed as a workers' compensation examiner by Defendant New York State Workers' Compensation Board ("WCB"). *See* Dkt. No. 1-3 at 16. Due to limited mobility in her arms and hands, Plaintiff took medical leave in December 2016. Dkt. No. 1-2 at 23. On March 10, 2017, Plaintiff underwent surgery and recovered substantial use of her arms. *Id.* at 5, 23. Plaintiff's allegations revolve around an attempt to return to work from this injury with a specific ADA accommodation: telecommuting five days per week. *See* Dkt. No. 1-1 at 79-146.

On September 13, 2017, Plaintiff's injuries were reviewed by Dr. Richard J. Mutty, M.D. at the request of Plaintiff's insurance carrier. *See id.* at 74. Dr. Mutty indicated that Plaintiff had "(1) Abnormality of the capitate bone wrist. (2) Carpal tunnel compression syndrome right wrist. (3) Medical epicondylitis left elbow persistent with significant loss of motion. (4) Left carpal tunnel compression syndrome status post endoscopic carpal tunnel decompression on 03/10/17." *Id.* at 76. Dr. Mutty further noted that, "She had a positive Tinel's sign of the median nerve in the right hand. … She has severe deformities of the left hand with amputation of most of the fingers

and an absent thumb. She has a middle finger as an intact finger but does have limitation of motion and a very small shortened little finger which is not functional." *Id.* at 75. Dr. Mutty estimated that Plaintiff would be able to return to work on November 7, 2017. *Id.* at 71. Upon return, Dr. Mutty recommended that Plaintiff be limited to "sedentary to minimal light work activity with a 15-pound weight restriction on an occasional basis." *Id.* at 77.

Anticipating a return to work, Plaintiff submitted by email a reasonable accommodation application to Lori Clark, one of her supervisors, on October 26 and 27, 2017. Dkt. No. 1-2 at 23, 32, 36-37. Plaintiff requested a reasonable accommodation of "frequent breaks, limited driving." Dkt. No. 1-1 at 64. Plaintiff sought to telecommute because a traditional commute from her home in Union Springs, New York to the WCB office in Syracuse, New York took approximately an hour, and driving for an extended period was difficult. Dkt. No. 1-2 at 23-24. Plaintiff's application included a medical report from her own provider which indicated a restriction of "no use of upper extremities," but did not reference driving or telecommuting. Dkt. No. 1-1 at 69.

Plaintiff's supervisor told her that she was approved to telecommute. Dkt. No. 1 at 3; Dkt. No. 1-2 at 24. Plaintiff's doctor cleared Plaintiff to return to work on December 11, 2017, and Plaintiff received a laptop and telecommuted from December 11, 2017 to January 18, 2018. Dkt. No. 1-2 at 24, 48.

On January 18, 2018, WCB Affirmative Action Administrator and Designee for Reasonable Accommodations-ADA Coordinator Jamie Benitez informed Plaintiff's supervisors that Plaintiff had, in fact, not received the necessary approval to telecommute. Dkt. No. 1-1 at 112-13. Plaintiff was required to return to in-person work, submit additional medical records, and renew her reasonable accommodation form. *Id.*

3

On February 1, 2018, Plaintiff's reapplication to telework as a reasonable accommodation was submitted to Mr. Benitez by Ms. Clark. *Id.* at 118. Plaintiff noted her inability to drive long distances on the reasonable accommodation form. *Id.* at 120. Plaintiff's medical provider submitted additional records, this time including Plaintiff's inability to drive for more than 30 minutes at a time. *Id.* at 125.

Later on February 1, Mr. Benitez denied Plaintiff's reasonable accommodation request. *Id.* at 130. Mr. Benitez stated that "New York State does not provide accommodations that are based in the inability of an employee to report to work, due to the distance between where the employee lives and the office." *Id.*

Plaintiff retained counsel, who sent a letter requesting reconsideration to Mr. Benitez on February 28, 2018. Dkt. No. 1-2 at 67. On March 14, 2018, Defendant Craig Better, who is an associate attorney for the WCB, responded. Dkt. No. 1-1 at 133. Through the interactive process with Plaintiff's counsel, Defendant Better proposed alternative reasonable accommodations such as (1) adjustment of hours; (2) voluntary reduction in work schedule; (3) reduction to part time; (4) utilization of public transportation or carpooling; or (5) application to telecommute under the existing program for the maximum allowance of three days a week. *Id.* at 133-34.

Plaintiff did not believe any of these proposed alternatives accommodated her disability. *Id.* at 136. On April 6, 2018, Plaintiff requested discretionary leave without pay due to her injuries and inability to commute to work without further accommodation, which was granted. Dkt. No. 1 at 3; Dkt. No. 1-3 at 28.

On July 2, 2018, Plaintiff, through counsel, filed a complaint with the EEOC under Charge No. 16GB802546. Dkt. No. 1-2 at 19. And on June 18, 2019, Plaintiff received a right to sue letter from the EEOC. Dkt. No. 1 at 7.

In June 2019, Plaintiff returned to work. *Id*. Through Defendant WCB's existing telework program, Plaintiff currently works from home three days a week and commutes two days a week to the office, the maximum amount of telework allowed. *Id*.

On September 19, 2019, Plaintiff filed a complaint to initiate this lawsuit. *See* Dkt. No. 1. This action, however, was closed due to Plaintiff's failure to pay the filing fee. *See* Dkt. No. 7. Following Plaintiff's payment of the filing fee, this case was reopened on April 10, 2020. *See* Dkt. No. 9.

Following the reopening, Plaintiff received two extensions of time to effectuate service of process on Defendants. Dkt. Nos. 13, 16. Defendants were eventually served on July 22, 2020. Dkt. Nos. 20, 21.

Defendants filed this motion to dismiss on October 13, 2020 for lack of personal jurisdiction, lack of subject of matter jurisdiction, and failure to state a claim. Dkt. No. 23.

### III. DISCUSSION

**A.      Personal Jurisdiction**

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). Under Rule 12(b)(5) of the Federal Rules of Civil Procedure, a defendant may assert insufficiency of process by motion. "The burden is on the plaintiff to establish that his service was not insufficient. If the court determines that it was insufficient, the court may, but is not required to, dismiss the action. Alternatively, the court may grant leave to allow the plaintiff to cure the insufficiency." *Sajimi v. City of New York*, No. 07–CV–3252, 2011 WL 135004, *3 (E.D.N.Y. Jan. 13, 2011) (internal citations omitted).

In a *pro se* case, however, the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003). Furthermore, Rule 4 of the Federal Rules is to be construed liberally "to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice." *Jaiyola v. Carrier Corp.*, 73 Fed. Appx. 492, 494 (2d Cir. 2003).

Here, Plaintiff failed to serve the Complaint on Defendants. The notarized proof of service lists the documents served on Defendants and the Complaint is absent. Dkt. Nos. 20, 21. Plaintiff has not directed the Court's attention to any evidence the Complaint was served. The Court therefore concludes that Defendants were not served with a copy of the Complaint.

The failure to serve the Complaint with the summons is improper service. The Federal Rules of Civil Procedure states that, "[a] summons **must** be served with a copy of the complaint. The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) and must furnish the necessary copies to the person who makes service." Fed. R. Civ. P. 4(c)(1) (emphasis added); *see also Hiller v. Farmington Police Dep't*, No. 3:12-CV-1139 CSH, 2015 WL 4619624, *5 (D. Conn. July 31, 2015) (dismissing *pro se* suit where the complaint was not served with the summons).

Federal Rule of Civil Procedure 4(m) requires the dismissal of an action that is not properly served within 90 days of the filing of the complaint, or an order that service be made within a specified time. This case was initially filed on September 16, 2019. Dkt. No. 1. On June 10, 2020, Plaintiff requested an extension to complete service. Dkt. No. 12. The Court granted Plaintiff until July 13, 2020 to effectuate service. Dkt. No. 13. On July 13, Plaintiff

6

requested another extension. Dkt. No. 15. Again, the Court granted an extension, this time until August 31, 2020 to effectuate service. Dkt. No. 16.

Defendants were served, without the Complaint, on August 20, 2020. Dkt. Nos. 20, 21. Now, Defendants have not been properly served approximately twenty-two months after the Complaint was filed. And Plaintiff has now exceeded the Court's second extension by approximately eleven months. Plaintiff has not requested another extension of time to serve Defendants, despite two previously granted extensions. Additionally, Plaintiff has not cured the service issue since she first became aware of Defendants' assertion that they did not receive the complaint.[1]

Accordingly, Defendants' motion to dismiss for lack of personal jurisdiction due to improper service is granted.

Generally, the dismissal for insufficient service of process is without prejudice. However, "'[w]here subsequent service of a complaint upon the defendant[s] would be futile, the Court need not dismiss the action against those defendant[s] without prejudice and may instead dismiss it with prejudice.'" *Saucier v. U.S. Dep't of Just.*, No. 1:18-CV-800, 2019 WL 587588, *3 (N.D.N.Y. Feb. 13, 2019) (quoting *Nesbeth v. New York City Management LLC*, 2019 WL 110953, * 4 (S.D.N.Y. Jan. 4, 2019)); *see also Koulkina v. City of New York*, No. 06cv11357, 2009 WL 210727, *4, n.10 (S.D.N.Y. Jan. 29, 2009) (noting that a showing of good cause by *pro se* plaintiffs, so to avoid dismissal for insufficient service of process, would be futile where plaintiff's claims would not survive a motion to dismiss).

---

[1] Plaintiff was first alerted to the defect in service on September 14, 2020, when Defendants served their premotion letter on Plaintiff. Dkt. No. 22. Plaintiff requested two extensions of time to respond to Defendants' motion to dismiss, which were granted. Dkt. Nos. 24, 25, 26, 27. Plaintiff was informed "no further extension requests will be entertained, without a showing of good cause." Dkt. No. 27.

As discussed below, Plaintiff's claims will be dismissed with prejudice where proper service is futile because the claim would not survive a motion to dismiss.

## B. Subject Matter Jurisdiction

### 1. Standard of Review

When a party moves to dismiss a claim pursuant to Rule 12(b)(1), "the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction." *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993) (citations omitted). For purposes of such a motion, "the allegations in the complaint are not controlling ... and only uncontroverted factual allegations are accepted as true...." *Id.* (internal citations omitted). Both the movant and the pleader are permitted to use affidavits and other pleading materials to support and oppose the motion to dismiss for lack of subject matter jurisdiction. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted). "Furthermore, 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *Gunst v. Seaga*, No. 05 Civ. 2626, 2007 WL 1032265, *2 (S.D.N.Y. Mar. 30, 2007) (quoting *Shipping Financial Services Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)).

### 2. Defendant WCB

The Eleventh Amendment bars actions against state and state agencies by private individuals in federal court unless the state has waived its sovereign immunity or Congress has validly abrogated that immunity. *Bd. of Trustees of Univ. of Alabama v. Garrett,* 531 U.S. 356, 373 (2001); *Gollomp v. Spitzer*, 568 F.3d 355, 365–66 (2d Cir. 2009). It is firmly established that Titles I and V of the ADA do not abrogate states' sovereign immunity. *Rosenfield v. New York State Div. of Veterans' Affs.*, No. 1:18CV1299, 2019 WL 4621962, *8 (N.D.N.Y. Sept. 24, 2019);

*Quadir v. New York State Dept. of Labor*, 39 F. Supp. 3d 528, 536 (S.D.N.Y. 2014) ("It is well settled that states retain their sovereign immunity against discrimination claims brought under Title I of the ADA. … And district courts within this Circuit have consistently extended *Garrett's* holding to ADA Title V retaliation claims").  Further, New York State has not waived its sovereign immunity under Titles I or V of the ADA.  *See Quadir*, 39 F. Supp. 3d at 537. It is equally well-established that the WCB is an arm of the state to which Eleventh Amendment immunity extends.  *See Palma v. Workers Compensation Bd.*, 151 Fed. Appx. 20, 21 (2d Cir. 2005) (summary order); *Peterec-Tolino v. Ace Am. Ins. Co.*, No. 20-CV-5354, 2020 WL 5211045, *3 (S.D.N.Y. Aug. 28, 2020).

Because Defendant WCB possesses sovereign immunity, which has neither been abrogated by Congress nor waived by New York State, it is futile to properly effectuate service in this action against Defendant WCB.

### 3. *Defendant Better in His Official Capacity*

It is unclear from the Complaint whether Plaintiff has sued Defendant Better in his official or personal capacity.  Because Plaintiff is *pro se*, the Court will read the "Complaint liberally, and where legally tenable, construe the [ ] Complaint as asserting all referenced claims against all defendants in all capacities."  *Goonewardena v. New York*, 475 F. Supp. 2d 310, 320 (S.D.N.Y. 2007); *Dawkins v. Williams*, 511 F. Supp. 2d 248, 279 (N.D.N.Y. 2007).

A suit against a state officer in their official capacity is a suit against the state because "the real party in interest is the entity."  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  And sovereign immunity, as discussed in the preceding section, protects the state against federal suits brought by citizens.  *Id*. at 169.

The Eleventh Amendment, however, does not preclude suits against state officers in their official capacity for prospective injunctive relief to prevent a continuing violation of federal law. This exception exists because, "when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011). The Supreme Court has recognized the application of prospective injunctive relief against state officers under the ADA:

> Our holding here that Congress did not validly abrogate the States' sovereign immunity from suit by private individuals for money damages under Title I does not mean that persons with disabilities have no federal recourse against discrimination. Title I of the ADA still prescribes standards applicable to the States. Those standards can be enforced by the United States in actions for money damages, as well as by private individuals in actions for injunctive relief under *Ex parte Young*.

*Garrett*, 531 U.S. at 374, n. 9; *see also Henrietta D. v. Bloomberg*, 331 F.3d 261, 288 (2d Cir. 2003) (upholding an official-capacity suit against a state officer under the ADA for prospective injunctive relief).

Although Plaintiff seeks monetary damages for lost wages and stress, Plaintiff also seeks, "That I be allowed to work from home 5 days a week like (4) drs stated I should." Dkt. No. 1 at 4. Such relief is properly categorized as prospective injunctive relief.

This Court therefore has subject matter jurisdiction over Plaintiff's claim against Defendant Better in his official capacity for the prospective injunctive relief sought. The Eleventh Amendment, however, renders futile claims against Defendant Better for monetary damages.

**C.    Failure to State a Claim**

   *1. Standard of Review*

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (*quoting Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," see Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," see *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of

11

entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

Courts must afford *pro se* plaintiffs "special solicitude" before granting motions to dismiss or motions for summary judgment. *See Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994). "A document filed *pro se* is 'to be liberally construed,' ... and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97 (1976)). "This policy of liberally construing *pro se* submissions is driven by the understanding that implicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (internal quotations and modifications omitted). Therefore, courts read *pro se* filings "to raise the strongest arguments that they suggest." *Id.* at 474.

Although Plaintiff has not requested leave to amend her Complaint, the Second Circuit has clearly stated that "[a] *pro se* complaint should not be dismissed without the Court's granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (internal marks omitted). However, leave may still be denied "where it is clear that no amendments can cure the pleading deficiencies and any attempt to replead would be futile." *Harrison v. New York*, 95 F. Supp. 3d 293, 305 (E.D.N.Y. 2015).

### 2. *Defendant Better in His Personal Capacity*

To the extent Plaintiff asserts claims against Defendant Better in his individual capacity, those claims are dismissed with prejudice because properly effectuating service of process is

futile. Only employers, not individual defendants, are subject to liability under the ADA. *Darcy v. Lippman*, 356 Fed. Appx. 434, 436–37 (2d Cir. 2009); *Stevens v. City of Oneonta*, No. 6:20-CV-317, 2020 WL 5909071, *3 (N.D.N.Y. Oct. 6, 2020) ("The Second Circuit has specifically held that the ADA does not provide for actions against individuals").

   3. ***Failure to Accommodate***

Section 12112 of the ADA provides as follows:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). The ADA further states that the term "discriminate," as used in the statute, includes

> not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.

42 U.S.C. § 12112(b)(5)(A). A discrimination claim may therefore be brought under Title I of the ADA for the failure to accommodate. *See, e.g.*, *Berger v. New York City Police Dep't*, 304 F. Supp. 3d 360, 368 (S.D.N.Y. 2018).

   To establish a disability discrimination claim for an employer's failure to accommodate, the plaintiff must establish: "(1) [s]he is an individual with a disability; (2) an employer covered by the ADA had notice of [her] disability; (3) with reasonable accommodation, [s]he could perform the essential functions of the position; and (4) the employer had refused to make such accommodations." *Lyons v. Legal Aid Soc.*, 68 F.3d 1512, 1515–16 (2d Cir. 1995); *Naik v. Mod.*

*Mktg. Concepts, Inc.*, No. 3:17CV0613, 2018 WL 4078264, *7 (N.D.N.Y. Aug. 27, 2018). Defendants challenge the sufficiency of the first and fourth factors.

Because Plaintiff may allege in an amended complaint, to the extent the original Complaint does not already do so, that she has a disability and her employer refused to make necessary accommodations, Plaintiff's claim for prospective injunctive relief against Defendant Better under Title I of the ADA is dismissed without prejudice. Plaintiff may amend and refile her Complaint and then properly effectuate service of process on Defendant Better.

### a. Disability under the ADA

Plaintiff can allege a disability within the meaning of the ADA sufficient to withstand a motion to dismiss. Under the ADA, a disability is "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *EEOC v. J.B. Hunt Transp., Inc.*, 321 F.3d 69, 74 (2d Cir. 2003) (quoting 42 U.S.C. § 12102(2)).

Under the ADA, "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A).

Plaintiff alleges "severely limited use of [her] arms and hands." Dkt. No. 1 at 2. In 2017, Plaintiff was diagnosed with "(1) Abnormality of the capitate bone wrist. (2) Carpal tunnel

compression syndrome right wrist.  (3) Medical epicondylitis left elbow persistent with significant loss of motion.  (4) Left carpal tunnel compression syndrome status post endoscopic carpal tunnel decompression on 03/10/17." Dkt. No. 1-1 at 76.  The same doctor noted that

> [s]he has severe deformities of the left hand with amputation of most of the fingers and an absent thumb. She has a middle finger as an intact finger but does have limitation of motion and a very small shortened little finger which is not functional.

*Id.* at 75.

Defendants are mistaken that there is a *per se* rule that carpal tunnel syndrome cannot qualify as a disability.  *Yaba v. Roosevelt*, 961 F. Supp. 611, 619 (S.D.N.Y. 1997); s*ee also Biancamano v. Special Metals Corp.*, No. 7:12-CV-1825, 2013 WL 4082721, *4 (N.D.N.Y. Aug. 13, 2013).

In general, the determination of whether an individual is substantially impaired in a major life activity is fact specific.  *See, e.g.*, *Gonzalez v. Rite Aid of New York, Inc.*, 199 F. Supp. 2d 122, 131 (S.D.N.Y. 2002).  Because Plaintiff may allege that her disability substantially impairs a major life activity, or that she is perceived as having a disability, dismissal of this claim with leave to amend is appropriate.

### b.  Reasonable Accommodation

Defendants argue that Plaintiff was granted reasonable accommodations.  Dkt. No. 23 at 15-17.  Plaintiff asserts that the accommodations do not properly address her restrictions.  Dkt. No. 28 at 3.

In *Nixon-Tinkelman v. New York City Dep't of Health and Mental Hygiene*, 434 Fed. Appx. 17 (2d Cir. 2011), the Second Circuit held that in certain circumstances, an employer may have an obligation to assist in an employee's commute under the ADA, including by allowing

them to work from home. Currently, Plaintiff is still required to commute to work two days a week. Dkt. No. 1 at 7.

Because Plaintiff may plead facts that state a claim for the refusal to accommodate her disability by allowing her to telecommute five days a week, Plaintiff's Title I claim is dismissed without prejudice.

### 4. *Retaliation*

The ADA makes it unlawful for an employer to "discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). A retaliation case under the ADA requires "a showing that the employee was engaged in an activity protected by the ADA." *Gold v. Carus*, 131 Fed. Appx. 748, 750 (2d Cir. 2005) (quotations and citation omitted).

A *prima facie* case for retaliation under the ADA requires a plaintiff to allege that "'(1) she engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse [employment] action; and (4) there was a causal connection between the protected activity and that adverse action.'" *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (quoting *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012)).

Defendants argue that Plaintiff does not allege what protected activity she engaged in or what adverse action was taken against Plaintiff because of her protected activity. Dkt. No. 23 at 17-18. The Court agrees.

Nonetheless, in an amended complaint, the elements of a retaliation claim "might be stated." *Grullon*, 720 F.3d at 139.  Plaintiff's retaliation claim, therefore, is dismissed without prejudice with respect to Defendant Better in his official capacity to the extent that the claim seeks prospective injunctive relief.

### 5. *Hostile Work Environment*

Defendants further contend that Plaintiff's hostile work environment claim was not properly exhausted because her EEOC charge did not allege a hostile work environment.  Dkt. No. 23 at 20-21.  Plaintiff's complaint states that she was "penalized for following drs. orders has created a hostile work environment."  Dkt. No. 1 at 3.  Plaintiff's EEOC complaint, however, only alleges that Defendant WCB failed to accommodate Plaintiff's disability and engaged in retaliation.  Dkt. No. 1-2 at 22-28.  There are no allegations to support a hostile work environment claim.  *Id*.

Claims not raised in an EEOC charge may nonetheless be asserted in federal court where the claims, "(1) concern conduct that falls within the scope of the EEOC investigation that can reasonably be expected to grow out of the charge; (2) allege retaliation for filing the charge; or (3) concern further incidents of discrimination carried out in precisely the same manner alleged in the charge." *Hamzik v. Off. for People with Developmental Disabilities*, 859 F. Supp. 2d 265, 277 (N.D.N.Y. 2012) (citing *Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir. 2003).  In general, an EEOC charge which only complains of retaliation or discrimination cannot support a hostile work environment claim without specific allegations of a hostile work environment contained within it. *Difillippo v. Special Metals Corp.*, No. 6:13CV00215, 2016 WL 4621087, *11 (N.D.N.Y. Sept. 6, 2016); *Briggs v. New York State Dep't of Transp.*, 233 F. Supp. 2d 367, 376-77 (N.D.N.Y. 2002); *Tone v. U.S. Postal Serv.*, 68 F. Supp. 2d 147, 153 (N.D.N.Y. 1999) (dismissing hostile work

environment claim for failure to exhaust where EEOC complaint only brought disability discrimination and retaliation charges).

Plaintiff's EEOC complaint did not alert Defendant WCB to any alleged hostile work environment.  Plaintiff's hostile work environment claim is therefore dismissed for failure to exhaust.

## IV. CONCLUSION

After carefully reviewing the record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion to dismiss is **GRANTED;**[2] and the Court further

**ORDERS** that Plaintiff shall file her amended complaint, if any, within **THIRTY (30) DAYS** of that date of this Memorandum-Decision and Order; and the Court further

**ORDERS** that if Plaintiff fails to file an amended complaint within thirty days of this Memorandum-Decision and Order, the Clerk of the Court shall enter judgment in Defendants' favor and close this case without further order from this Court; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: July 21, 2021
      Albany, New York

_Mae A. O'Agostino_
Mae A. D'Agostino
U.S. District Judge

---

[2] Plaintiff's claims for disability discrimination arising from a failure to accommodate and retaliation against Defendant Better in his official capacity for prospective injunctive relief is dismissed without prejudice. All other claims are dismissed with prejudice.